All right, good morning. So for the Doe v. United States Securities and Exchange Commission, case number 23-271. Each side will have 15 minutes. If the appellants would like to reserve time for rebuttal, please be aware you are responsible for keeping track of your time and please do let me know if you plan to reserve some time. I do plan to reserve some time, say three minutes for rebuttal if I may. You may, and you're Mr. Hilbert? My name is John Hilbert, Hilbert Satterly from San Diego. I represent the petitioner in this matter, John Doe. I'm going to refer to the petitioner as either the claimant or my client or Mr. Doe, given the confidential nature of this particular proceeding, and I assume that my opposing counsel will do the same to protect the identity of Mr. Doe. This case involves my client's legitimate request for a whistleblower award under the Dodd-Frank Act for reporting security, ongoing securities frauds that the Commission used to support its enforcement action against the various defendants. Although the administrative record is overwhelmingly, although the administrative record overwhelmingly supports the issuance of a whistleblower award, the Commission denied the client's request by ignoring certain undisputed facts and several relevant factors. The facts that qualify my client for a whistleblower award are not in dispute. They include the fact that at the time my client discovered the ongoing fraud by the defendants in the civil action, there was a pending civil action that in which there was a pending preliminary injunction that prohibited these defendants from committing further securities violations. In that context, my client was approached by one of the fraudsters, one of the defendants, and that fraudster tried to induce my client to participate in a further fraud, the same type of fraud that was the subject of the action and supported the preliminary injunction. But it was different. The SAC fraud was different from what the agency was prosecuting, correct? No, with all due respect, I don't think it was different. It involved a different... It involved a different fraud scheme, right? Well, it involved different, it involved the same type of fraud and fraud scheme as the earlier ones. The only difference was the SAC fraud was a different difference in time. The earlier frauds were all based upon separate fraud... Not only did Mr. Hilbert, let's get some facts straight. The SEC prosecution did not deal with any facts regarding SAC, correct? Up until that point. Up until that point. Up until that point, and it's correct. And did they use the facts of the SAC fraud to prosecute the claim that they had pending? Yes, they did. How? Because they amended their complaint and added the SAC fraud and the contempt order to the second amended complaint. They, the SEC wants to suggest that that was just a procedural allegation, but that's not the way the actions pled. That's not the way the action proceeded. The action is pled alleging the facts of the SAC fraud and the contempt order, and those allegations are incorporated into each and every claim of fraud and each and every cause of action. It's not only incorporated by the reference, but it's also referred to by allegations in the various claims when the SEC alleges that these frauds, these similar frauds, everybody acknowledges, the SEC acknowledges, the court acknowledged. Let me ask you one more question before we get into that. Was any money exchanged because of the SAC fraud? No. Thank you. Unfortunately, but fortunately it was the SAC fraud was cut off prior to the consummation of any of the frauds, but it's important to put in context that at the time of the contempt order that stopped this SAC fraud in its tracks, no one knew whether or not Mr. McGinn had consummated any of these frauds and collected a bunch of money from victims. How are these awards funded? These whistleblowers are funded by a, not from the monies collected, but by a separate whistleblower fund set up by the government. So in theory, if there was no money ever collected on a case, could there still be a whistleblower award? No, but it's not because the money, the awards come from that collection. It's because the amount of the award is dependent upon the amount collected in the whistleblower action. There's a percentage that is assigned to the whistleblower award. It doesn't come from the pot of money collected. It comes from a different pot of money, but it's, it's, the determination is based upon the amount of money collected. But no money was collected in the action because of the SAC fraud because no money ever changed hands in the SAC fraud, correct? That's correct, but that's not a requirement for a whistleblower award. The information provided to the Commission must only lead in part to the, how did the SAC claim lead in part to the recovery of funds in a non-SAC fraud? Because it was an integral part of the overall enforcement action against these defendants. It involved the same type of fraud, and as a result, the court ordered disgorgement, which is the definition of monetary sanctions. If it was such an integral part, why did the district court not even mention it in its order granting summary judgment? Because it didn't have to. The remedies for that fraud had already been obtained by the SEC and issued by the court. Shut down SAC, freeze those assets, disgorge any assets that they did have. Turns out that they didn't have it yet, fortunately, because my client's prompt action notifying the SEC was able to allow the SEC to stop dead in its tracks the same type of fraud that had been the subject of the complaint and the preliminary injunction. The contempt matter, based upon my client's evidence, was totally dependent upon the plenary injunction action, which was... But the contempt matter didn't produce any funds that could be used to disgorge and reward, right? That is correct, but it doesn't... if you look carefully at the rules in the statute, the separate proceeding, if they want to call it this a proceeding, does not require that the separate order lead directly to the recovery of funds. It only has to be part of the enforcement action and that's what... Let me ask you this. If the SAC offering was the only reason we were here, that that's the only thing they had against these fraudsters, does John Doe still get anything even if no money came to light? No, but not because it has to lead to the recovery of money, but because... it's hard to distinguish... it's because there's no... if there was no money recovered in this whole civil action, for example, then there would be no whistleblower awards and that's not because they didn't do a based upon the statutory scheme that talks about the amount of the award being tied to the collections. There's no... nothing in the code or the rules that require the whistleblower claimant to monetize his information. He only asked to prove that he... that his information caused the SEC to investigate, in this case, a new line of fraud that was related to the old fraud and that it was a... they got... they got remedies, in this case, based upon the contempt. What are you saying that... explain to me factually what is it that had your client not brought the SAC offering to the SEC, what would they not have been able to prove? How would their outcome be different? Because if... then the fraudsters would have been able to consummate their frauds, creating potential... another potential five million dollars in injury to potential investors. By providing the SEC the information necessary to stop this fraud in its tracks, my client's activity and the contempt motion protected the funds that were actually collected, that were most funds, from dissipation by the fraudsters, because they could have continued to dissipate these funds. They had not been collected yet, but the contempt order shut them down and prevented it from dilution. Yes, sir. What... trace for me the causative chain between your client's information about SAC, from which no funds were recovered, and the recovery by the SEC of the funds on the other frauds. What's the causative connection? The fact is, is that this... the SAC fraud was just a continuation of the earlier fraudulent activity that supported the SEC's complaint, and that formed the basis for the preliminary injunction. The contempt on the SAC fraud was wholly dependent upon the relationship between the SEC fraud and the earlier frauds. And your position is that the SEC wouldn't have been able to get the preliminary injunction without the SAC information? No. They would not have been able to get the additional injunctive relief that was provided in the contempt measure. They already had the preliminary injunction. This new fraud was a violation of that preliminary injunction, giving rise to the contempt proceeding in which the court awarded additional relief. Is it your position that out of that additional relief, your client should share? My client should get a whistleblower award. Again, the whistleblower award does not reduce the amount to be distributed to the harmed investors. It just provides a basis for determining the amount. So giving my client the whistleblower award that he deserves does not dilute the funds available for the investors. However, had my client not brought this to the attention, the fund available for investors would be diluted and possibly dissipated. The SEC's position basically wants to take the contempt proceeding based upon my client's original information and put it in a box separate and analyze it separately. But the record doesn't allow that to happen. It has to be talked about and analyzed in the context of the whole enforcement action by the SEC. There was an contempt motion based on all of the facts that my client brought. The SEC certainly thought that it was related and it arose out of the same nucleus of facts. Otherwise, they wouldn't have made those allegations in their pleadings in support of the contempt order. They wouldn't have amended their complaint to include these allegations as a further support for the relief and the overall action. Counsel, would you like to save the remaining time for your rebuttal? I would. Thank you, Your Honor. I would only say that... Well, I'll save my time. Appreciate it. Thank you. I'll give you a full three minutes. Your Honors, Steven Yoder for the Securities and Exchange Commission. May it please the Court. Doe's main argument misses the mark. He contends that the Commission failed to apply the definition of the term action in its own case. But as the Commission explained, Doe's claim fails regardless of whether that definition applies here. Specifically, assuming Doe is correct that the contempt proceeding was part of the covered action, the Commission reasonably determined that even so, his information did not lead to the successful enforcement of that action under Rule 21F4C. Under C1, the Commission reasoned that the covered action was not based on Doe's information about the SAC offering because that offering was never incorporated in the allegations of misconduct by defendants. Then why did you amend your complaint? Your Honor, the docket suggests that there was a motion to dismiss that was decided not long before the Commission amended its complaint, and that there were actually multiple motions. They were granted in part, and so the most obvious explanation from the docket is simply that the Commission wanted its complaint to conform to the District Court's decision on those motions. So there was a motion to dismiss that was denied, right? Granted in part and denied apart, as I understand. Yes. Why would the Commission want to add the SAC information from Doe after that ruling? Your Honor, the Commission staff added that information simply to the procedural history of the complaint. Why they added it, I can't say. That's part of the staff's prosecutorial discretion in terms of how they decide to bring the action, but they did not include it in the allegations of misconduct. Counsel, would John Doe have a better argument if money had actually been collected? Yes, Your Honor, he would. So if he would have waited till the fraudsters got away with it a little bit more, he would have been in a better position than letting you know ahead of time? That's a fair question, Your Honor, and it's absolutely the case. The Commission is not accusing Doe of doing anything wrong here. He absolutely did the right thing in bringing information about misconduct to the Commission's attention. But the way that Congress wrote this statute, it does not reward everyone who brings information to the Commission. It doesn't even reward everyone if the Commission uses that information. Congress wrote the statute to require that the information must lead to the successful enforcement of the Commission's action, and the Commission exercised its rulemaking authority under Section 21FJ to implement that provision, and that resulted in Rule 21F4C, which we've been talking about and which, as I understand it, Mr. Doe does not challenge as being consistent with the statute. This is simply a balance that Congress struck and the Commission is trying to act consistently with that balance by applying its rules as written. I'm still stuck with the idea that the Commission had no purpose other than, quote, as you say, procedural and for staff reasons that you haven't plumbed, right, in making the amendment. It seems to me that if the motion to dismiss was in part granted and then the Commission amended its complaint to put in Doe's allegations, it did so as part of the enforcement action to show that these malefactors were still up to the business which the SEC was prosecuting. So they would add weight to the allegations that they were violating the law. You can't just get rid of an amendment by saying, well, I don't know why they did it, it's the staff, they had a procedural reason. They couldn't, they were adding these allegations, I think, for the purpose of showing that McGinn was a bad actor. Wasn't that so? That may very well be the case, Your Honor, but regardless the standard remains whether Doe's information made a significant contribution to the Commission's action under C-2. So the question is here whether it was arbitrary and capricious to deny that it made a significant contribution. That's correct, and that arbitrary and capricious standard does give the Commission some level of discretion to make that decision, but it also has teeth. It requires the Commission to explain its decision based on the facts of the record and in reasonable fashion to draw a line from those facts to the conclusion it ultimately draws. And in this case, Your Honor, the factual record amply supports the Commission's conclusion. As we point out in our brief, Doe's information about the SEC offering was never added to the allegations of misconduct. It played no role in the decision as to liability. That decision was predicated on collateral estoppel from a parallel criminal conviction for some of the offerings that the defendants brought, but not for the SEC offering. And it also similarly played no role in the entry of relief at the end of the action. Typically what the Commission does in these significant contribution cases is to try to draw a chain, a dotted line, if you will, from the information to the resolution of the action and the entry of relief to determine what kind of contribution was made. This is the first case in the 15 years that we've had this program where the information was not used in the information broadly, I'm sorry, in the action broadly on the merits and in entering relief. Is that in the record? The absence is reflected in the record, Your Honor. So if Your Honor wishes, I would point Your Honor to, let's see, it's, I forget which volume, but it's in the excerpts of record page, pardon me, let's see, page 118 is where the District Court makes its decision based on the collateral estoppel effect of the convictions, and it makes no mention of the, no mention at all of the SEC offering. And in this case the Commission reasonably determined that there was no causal chain between Mr. Doe's final resolution of the action. So then the question became, what is the significance of the contempt proceeding within the broader action as a whole? And the Commission explained on the facts of this record, at least, that Mr. Doe's information did not result in the freezing or recovery of any assets. And based on that fact, it reasonably drew the conclusion that Mr. Doe's administrative record was incomplete and that there were gaps in Mr. Stelting's declaration. How do you respond to those arguments? Yes, Your Honor. To be clear, I'm not exactly sure how or what Mr. Doe meant by gaps, because in his reply brief he says, well, I never mentioned the word gap in my opening brief. The Commission's approach to the Stelting declaration is that it is a fact witness, because he was one of the enforcement staff who was primarily responsible for the investigation and the action. In his declaration he's speaking as a fact witness. Doe would essentially have him act, as I understand it, as an expert witness and have him opine on the various legal standards and legal requirements to render him eligible for an award, such as significant contribution or common nucleus of operative facts. Those simply aren't things that one would expect a fact witness to address, and that's what Mr. Stelting's declaration was for on this record. So we don't believe there are any gaps. Okay, thank you, Your Honor. So if there are no further questions, I'll rest. I appreciate that. Okay, we're gonna put three minutes back on the clock for you. I want to briefly address a few things that Mr. Yoder talked about. The allegations relating to the SEC fraud and contempt were actually incorporated into the merits of the complaint. Each cause of action was referenced and incorporated by reference, as well as included as a basis for the relief by the allegation that the frauds continued up until the present time of the second amendment complaint, which included the SEC fraud. Was there any amendment of the criminal action indictment? Not that I'm aware of, but it's not accurate that the summary judgment motion, that's one of the other points, was based solely on the collateral estoppel effect of the criminal action. If you look at the court's ruling on the MSJ, the raised judicata effect or the collateral estoppel effect of the criminal proceeding was significant, but it wasn't the only basis for the ruling. In the prayer for the complaint, that gave rise to the summary judgment. The SEC asked for first references, the earlier relief included in several orders, including the relief ordered in the contempt proceeding, and then says we want additional relief as well. So it's clearly they were relying on the fact that this relief from the contempt order had been previously provided. The Stolting Declaration is deficient because all it does is start the improper record from the beginning, from the beginning of the analysis. It does not address undisputed facts relating to my client's original information and the use of that information to support the contempt proceeding. It ignores the fact that this information was discovered by my client, that was not known to the Commission, was provided to the Commission, which the Commission recognized was part and parcel of the same fraudulent scheme, and made that point in its contempt papers, and resulted in a contempt order that granted the SEC significant additional relief that had not yet been requested or obtained. But did the contempt order result in any further funds for disgorgement? The contempt order was a monetary sanction, as that term is defined in the rules. Against McGinn. Against McGinn, and because the term of monetary sanction includes the right, the requirement to to disgorge any funds collected. It just so happens fortuitously, because my client's immediate action, no funds had yet been lost. But the order for disgorgement, which is what's what the rules define as a monetary sanction, was in place. All right, any other questions? Thank you, your time is up. Thank you, Your Honors. Have a good morning. I appreciate that. This matter is now submitted, and the court will now take a 10-minute recess. Thank you.
judges: BEA, ALBA, Brown